UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. _____

| | |
|---|---|
| UNITED STATES OF AMERICA, | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| PLAINTIFF, | |
| v. | |
| $12,000.00 IN U.S. CURRENCY, | |
| DEFENDANT. | |

Plaintiff United States of America, through its attorneys Erica H. MacDonald, United States Attorney for the District of Minnesota, and Andrew Tweeten, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $12,000.00 in U.S. Currency for violations of 21 U.S.C. § 841 *et seq.*

## THE DEFENDANT *IN REM*

2. The Defendant *in rem* is $12,000.00 in U.S. Currency seized from Terry Scruggs at the Minneapolis/St. Paul International Airport on February 9, 2018. The Defendant *in rem* is in custody of the United States Marshals Service.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant $12,000.00 in U.S. Currency (the "Defendant Currency"). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Currency is located in this District.

## FACTS

6. On February 9, special agents of the United States Drug Enforcement Administration ("DEA") and officers from the Minneapolis-St. Paul International Airport ("MSP") Airport Police Department ("APD") Special Investigations Division received information from a Confidential Source ("CS") regarding a suspicious travel itinerary for Terry Scruggs ("Scruggs").

7. On February 9, 2018 Scruggs booked a one-way ticket from Philadelphia, Pennsylvania to Sacramento, California on Delta Airlines.

8. Scruggs' travel itinerary consisted of two flights, with a layover at MSP.

9. The first leg was Delta Flight 2591, scheduled to depart Philadelphia International Airport ("PHL") on February 9, 2018 at 2:40 p.m. and arrive at MSP at 4:46 p.m. that same day.

10. The second leg was Delta Flight 1858, scheduled to depart MSP on February 9, 2018 at 5:49 p.m. and arrive at Sacramento International Airport ("SMF") at 8:00 p.m. that same day.

11. Scruggs booked his ticket at 6:16 a.m. on February 9, 2018, less than nine hours before he was scheduled to depart.

12. Sacramento is a well-known source area for multiple controlled substances.

13. Individuals trafficking narcotics and proceeds from the sale of narcotics often book their travel at the last moment to avoid law enforcement detection and due to the unpredictable nature of the illegal drug business in regards to collecting money for outstanding drug debts and the availability of the desired drugs.

14. Investigators learned that Scruggs' criminal history includes multiple prior narcotics related arrests and convictions and that Scruggs was on federal parole for a narcotics offense.

15. At approximately 5:00 p.m., APD Sergeant John Christenson and DEA Special Agent Dick Mah observed a man matching Scruggs' physical description at Gate G12, the departing gate for Delta Flight 1858 from MSP to SMF.

16. The man's identity was later verified to be Terry Scruggs. *See* Paragraph 31, *infra*.

17. Sergeant Christenson approached Scruggs, displayed his police identification card, and asked if Scruggs had a minute to talk. Scruggs said that he did and followed Sergeant Christenson to a less crowded area near Gate G12.

18. Sergeant Christenson stated that he is part of a plain-clothes division of the APD that speaks with passengers throughout the day to make sure items are not smuggled through the TSA security checkpoints.

19. Sergeant Christenson asked Scruggs if anyone had asked him to carry anything on to the flight. Scruggs stated that no one had.

20. Sergeant Christenson asked Scruggs if he had packed his bags himself. Scruggs stated that he did.

21. Sergeant Christenson asked Scruggs if he had any luggage other than his carry-on bag. Scruggs stated that he did not have any luggage other than his carry-on bag.

22. Sergeant Christenson asked Scruggs if he had brought any prohibited items such as razors, knives, firearms, or explosives through the TSA security checkpoint. Scruggs chuckled and responded that he did not have any of those items.

23. Sergeant Christenson asked Scruggs if Special Agent Mah could search his carry-on bag. Scruggs stated "yeah, alright," and handed the bag to Special Agent Mah.

24. Sergeant Christenson asked Scruggs if he had any sensitive or personal items that he would like Special Agent Mah to keep hidden from public view as he searched the bag. Scruggs shook his head no. Sergeant Christenson then asked Scruggs if he had any prescription medication or large amounts of currency packed in his bag. Scruggs said, "I have a little bit of cash." Sergeant Christenson asked, "How much do you have?"

4

Scruggs responded, "Just a little bit." Sergeant Christenson then asked, "Not like forty thousand dollars or anything, right?" Scruggs responded, "Nah, I got like twelve," and pointed to white envelopes in his carry-on bag.

25. Special Agent Mah located three white envelopes in Scruggs' carry-on bag containing a mass consistent with stacks of U.S. currency.

26. Sergeant Christenson asked Scruggs where the money came from. Scruggs responded that he had withdrawn it from his bank account at Navy Federal Credit Union.

27. Sergeant Christenson asked Scruggs what he planned to do with the money. Scruggs responded that he was planning to have fun in Sacramento, visit strip clubs, and maybe try to expand his business.

28. Sergeant Christenson asked Scruggs what kind of business he was in. Scruggs responded that he is a courier of automotive parts, but did not provide a business name or any other information.

29. Sergeant Christenson asked Scruggs if he would be willing to go to the APD Office to further discuss the money in his carry-on bag. Scruggs agreed to go to the APD Office.

30. Upon arrival at the APD Office, Sergeant Christenson advised Scruggs that he was not being detained or under arrest and told Scruggs that he could leave at any time.

31. Sergeant Christenson verified Scruggs' identity as Terry Scruggs.

32. Sergeant Christenson again asked Scruggs what he planned to do with the money in Sacramento. Scruggs responded that he planned to start a business, have fun, watch the Sacramento Kings play the Portland Trailblazers, and visit a few strip clubs.

33. Sergeant Christenson asked if Scruggs planned to meet up with anyone in particular in Sacramento. Scruggs stated that he was not planning to meet anyone in particular and reiterated that he was going to Sacramento to check around about expanding his business.

34. Sergeant Christenson asked Scruggs about the source of the money. Scruggs indicated that he withdrew the money from his account at Navy Federal Credit Union on a line of credit.

35. Based upon my training and experience, I am informed that it is uncommon for a legitimate business to operate by carrying large quantities of cash or by delivering cash to suppliers by carrying the cash in luggage carried onto commercial airline flights, particularly when the cash is funded by a line of credit or other bank loan that remains outstanding.

36. Sergeant Christenson asked Scruggs about his criminal history. Scruggs confirmed that he was convicted on a federal cocaine charge and had served 13 years in prison. Scruggs indicated that he was released from prison in June of 2017.

37. Sergeant Christenson asked Scruggs if he would permit a drug dog to sniff the currency. Scruggs stated, "Sure, shouldn't be any drug odor on it though." Sergeant Christenson then placed the envelopes containing the currency found in Scruggs' carry-on bag on the ground and asked APD Detective Mitch Irvin to perform a canine sniff of the currency.

38. Detective Irvin directed his United States Police Canine Association certified dog "Jackson" to sniff the currency. Jackson sniffed the area around the envelopes, then

sniffed the envelopes themselves. Immediately after sniffing the envelopes, Jackson sat down, which Sergeant Christenson recognized as Jackson's positive indication to the presence of a narcotic odor.

39. Based on Jackson's positive indication of a narcotic odor on the money, Scruggs' previous federal drug conviction, last minute ticket purchase, one-way ticket purchase, destination of Sacramento, California, and total currency well in excess of the amount necessary for his explained plans, Special Agent Mah and Sergeant Christenson determined that the money would be seized as suspected drug proceeds or proceeds intended for the purchase of illegal narcotics.

40. The investigators issued Scruggs a receipt for the currency and documented the seizure.

41. On May 1, 2018, Scruggs submitted a claim for the Defendant currency in the DEA's administrative proceeding.

## BASIS FOR FORFEITURE

42. The allegations in the preceding paragraphs are re-alleged and incorporated by reference.

43. The Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because the currency was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

## CLAIM FOR RELIEF

44. The Plaintiff requests that the Court issue a warrant for the arrest and seizure

of the Defendant *in rem*, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant *in rem*, that the Defendant *in rem* be forfeited and condemned to the United States of America, that the Plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated:   July 30, 2018  Respectfully submitted,

ERICA H. MacDONALD
United States Attorney

*s/ Andrew Tweeten*

By:   ANDREW TWEETEN
Assistant U. S. Attorney
Attorney ID Number 0395190
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN   55415
(612) 664-5600
andrew.tweeten@usdoj.gov

Attorneys for Plaintiff

## VERIFICATION

I, Burton V. Crary, verify and declare under penalty of perjury as follows:

I am a Task Force Officer with the U.S. Drug Enforcement Administration ("DEA"). I have been a Task Force Officer for the past 2 years and have extensive experience with narcotics interdiction. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a Drug Enforcement Administration Task Force Officer.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:   July 30, 2018          *s/ Burton V. Crary*
                                BURTON V. CRARY
                                U.S. Drug Enforcement Administration
                                Task Force Officer